UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VESTER MILLS #208720
        Plaintiff,                       CASE NO.: 2:07-CV-13285

vs.                                   DISTRICT JUDGE GERALD E. ROSEN
                                   MAGISTRATE JUDGE STEVEN D. PEPE

BLAINE LAFLER, PASSION FIELDS,
LINDA ADAMS, JOELLE SLAVIN,
D. S. NASH, & NATHAN LINDSAY,
        Defendants.
_____/

**Report and Recommendation Regarding Defendants' and Plaintiff's**
**Motion for Summary Judgment (DKT. ## 14 & 24)**

On August 7, 2007, Plaintiff, Vester Mills, filed a complaint pursuant to 42 U.S.C. §

1983 (Dkt. # 1). In his complaint, Plaintiff alleged that prison staff failed to protect him from

assault by another inmate during his incarceration at Saint Louis Correctional Facility ("SLF").

He also claimed a due process violation when his property was taken from his cell and

subsequently lost. Plaintiff names several SLF employees as Defendants: Warden Lafler,

Assistant Residential Unit Supervisor ("ARUS") Fields, ARUS Adams, Residential Unit Officer

("RUO") Slavin, and RUO Nash (collectively the "MDOC Defendants").

On October 12, 2007, MDOC Defendants filed a motion to dismiss and alternatively a

motion for summary judgment (Dkt. # 14). Plaintiff filed a motion for an extension of time to

respond to this motion (Dkt. # 16) which was granted in part on November 6, 2007 (Dkt. # 17).

Plaintiff responded to the motion on December 13, 2007 (Dkt. # 20), and filed a motion for

partial summary judgment on January 17, 2008 (Dkt. # 24). On February 1, 2008, Defendants

responded to Plaintiff's motion for summary judgment (Dkt. # 32). On August 31, 2007, all pretrial matters were referred to the undersigned (Dkt. # 11).

## I.     Factual Background:

Plaintiff alleges that on June 14, 2006, prisoner Lindsey was transferred to SLF and placed in Plaintiff's cell number 137 (Dkt. # 1, ¶ 18). Prior to that time, Plaintiff had bunked with Gary Vanreyendam, for the entirety of Plaintiff's time at SLF. *Id.* at ¶16. Between June 14 and June 27, Defendant Lindsey repeatedly threatened and assaulted Plaintiff, insisting that he move out of their cell. *Id.* at ¶ 19. In grievance SLF-06-07-1281-03b, Plaintiff stated that he informed Defendants Adams and Fields of the assaults by prisoner Lindsey (Dkt. # 1, Ex. B). Specifically, he stated that on June 21, 2006, he spoke to ARUS Fields and informed her "of the threats and assault by Lindsey in detail" emphasizing "that these were serious problems and requested that I be moved immediately." *Id.* ARUS Fields allegedly told Plaintiff "that she would be off of work for the next 4 days and that she could not do anything until she returned on June 26, 2006." *Id.* ARUS Fields did not make any report or investigation into Plaintiff's complaints. *Id.* at ¶ 24. At no time did Plaintiff sign a "protection request/waiver." *Id.* at ¶ 26.

Plaintiff alleged that on June 22, "Lindsey confronted and threatened plaintiff." *Id.* at ¶ 27. Subsequently, Plaintiff spoke to Defendant RUO Nash who referred him to ARUS Adams. *Id.* at ¶¶ 28-30. Plaintiff then went to ARUS Adams' office and reported the incident expressing his fear of being seriously assaulted. Adams allegedly responded that she was not Plaintiff's ARUS and that he should go work things out with Defendant Lindsey. *Id.* at ¶ 42. Plaintiff informed ARUS Adams about an open bunk in the smoking section, and even though he was a non-smoker he expressed a willingness to bunk there in order to get away from Defendant

Lindsey.  *Id*. at  Ex. B.  ARUS Adams did not move Plaintiff telling him that he would have to wait and see ARUS Fields when she returned.  *Id.*

On June 26, Plaintiff twice approached ARUS Fields to report Defendant Lindsey's threats and his assault since seeing her on June 21; he pleaded to be moved to another cell.  *Id*. at ¶¶ 43, 44.  ARUS Fields responded that there were no open beds and Plaintiff would have to wait.  *Id*. at  ¶ 45.

On June 27, 2006, Defendant Lindsey attacked Plaintiff with a combination lock seriously injuring him.  As a result, Plaintiff was taken to two hospitals, hospitalized for 4 days, suffered bleeding on his brain, and was re-hospitalized after having a seizure due to his head trauma.  *Id*. at  ¶¶ 49, 50.  Defendant RUO Slavin first discovered the attack, but allegedly slammed the door and fled rather than assist Plaintiff by stopping the attack.  *Id*. at  ¶¶ 53, 54. Shortly thereafter, several corrections officers arrived ending the fight.  *Id*. at  ¶¶ 55, 56.

Plaintiff was issued a major misconduct ticket for the "fight," with Defendant Lindsey, which was later dismissed.  *Id*. at  ¶¶ 64, 69.  Plaintiff alleges that on the way to the hospital, all of his personal property, including his Reebok shoes and a wristwatch, was removed from him without a receipt being issued.  *Id*. at  ¶¶ 57, 58).   At some time between June 27 and July 10, 2006, unidentified corrections officers packed up Plaintiff's property from his cell without issuing Plaintiff a receipt.  *Id*. at ¶ 72.  On July 10, Plaintiff was re-issued his personal property but discovered that some of his belongings, worth $167.79, were missing.  *Id*. at  ¶¶ 73, 74.

Plaintiff filed two grievances relating to the events alleged in this suit.[1]  Plaintiff fully exhausted each grievance.  Grievance SLF-06-07-1280-19d dealt with the loss of Plaintiff's

---

[1] The two grievances are: SLF-06-07-1280-19d and SLF-06-07-1281-03b.

personal property, and was decided in his favor (Dkt. # 14, Ex. A). Review at Step II of the grievance process noted that "investigation reveals that RUO Nash confirms that the Grievant was in possession of the missing items and that they were placed in a plastic bag and taken to the segregation property room. There (*sic*) whereabout thereafter are unknown." *Id.* At Step III it was determined that Plaintiff was "entitled to reimbursement" for his lost items. *Id.*

As noted above in grievance SLF-06-07-1281-03b, Plaintiff stated that he informed Defendants Adams and Fields of the threats and assaults by prisoner Lindsey yet they failed to move him or address his concerns in a timely manner (Dkt. # 1, Ex. B).

## II.    Legal Analysis

## A.    Prison Litigation Reform Act

Under the Prisoner Litigation Reform Act ("PLRA"), a prison inmate cannot maintain a civil rights action challenging prison conditions if he did not first exhaust "such administrative remedies as are available." The Supreme Court clarified that a prisoner must follow the state corrections system's procedures and *properly* exhaust all administrative remedies before he may bring an action in federal court. *Woodford v. Ngo*, 126 S. Ct. 2378 (2006). Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 2386. The *Woodford* Court explained:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison

> then rejects the grievance as untimely, the prisoner could proceed directly to
> federal court. And acceptance of the late grievance would not thwart the
> prisoner's wish to bypass the administrative process; the prisoner could easily
> achieve this by violating other procedural rules until the prison administration has
> no alternative but to dismiss the grievance on procedural grounds. We are
> confident that the PLRA did not create such a toothless scheme.

*Id.* at 2388.

Thus, an untimely or otherwise improper grievance, even though appealed through all steps of a grievance procedure, does not fulfill the PLRA exhaustion requirement. In *Jones v. Bock*, 127 S. Ct. 910 (2007), the Supreme Court overturned the Sixth Circuit's total exhaustion rule and its requirement that prisoners specifically plead exhaustion in their complaints. It may still be raised as an affirmative defense by defendants.

**B.  Standard for Liability Under § 1983**

In order to demonstrate liability under 42 U.S.C. § 1983, a plaintiff must establish that: 1) he was deprived of a right secured by the federal Constitution or laws of the United States; 2) the deprivation was caused by a person acting under color of state law; and 3) the deprivation occurred without due process of the law." *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994) (citing *Rhodes v. McDannel*, 945 F.2d 117, 119 (6th Cir. 1991), cert. denied, 502 U.S. 1032, 112 S. Ct. 872 (1992)). Respondeat superior is not a basis for liability under 42 U.S.C. § 1983, *Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197 (1989), unless the plaintiff shows "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984).

**C.  Summary Judgment**

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has

interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment is improper, however, if the non-movant has not been afforded a

sufficient opportunity for discovery. *White's Landing Fisheries, Inc. v. Buchholzer,* 29 F.3d 229, 231-32 (6th Cir. 1994), *accord Plott v. General Motors Corp.*, 71 F.3d 1190, 1195 (6th Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5, 106 S. Ct. 2505, 2511 n. 5, 91 L. Ed. 2d 202 (1986)), *cert. denied,* 517 U.S. 1157, 116 S. Ct. 1546 (1996). The non-movant bears the obligation to inform the district court of his need for discovery, and before a summary judgment motion is decided, he must file an affidavit pursuant to Fed. R. Civ. P. 56(f) which details the discovery needed, or file a motion for additional discovery. *Vance By and Through Hammons v. U.S.*, 90 F.3d 1145, 1149 (6th Cir. 1996) (footnotes omitted). "Beyond the procedural requirement of filing an affidavit, Rule 56(f) has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000) (citation omitted). If the non-movant makes a proper and timely showing of a need for discovery, the district court's entry of summary judgment, without permitting him to conduct any discovery at all, will constitute an abuse of discretion. *Vance By and Through Hammons*, 90 F.3d at 1149.

## III.    Factual Analysis:

### A.    Plaintiff's Motion for Summary Judgment

Other than reiterate the facts alleged in his Complaint, Plaintiff has done little to establish that his motion for summary judgment should be granted. The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Univeral, Inc.*, 276 F.3d 845, 848

(6th Cir. 2002).

In their response motion, Defendants allege sufficient, specific facts, which if believed by a fact-finder, would defeat Plaintiff's motion for summary judgment. *See Anderson*, 477 U.S. at 252. These facts are based on sworn affidavits given by Defendants Nash, Adams and Fields, such that the jury could reasonably find for the non-moving party. Accordingly, summary judgment is inappropriate and **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment against Defendants be **DENIED.**

**B.      Defendants' Motion for Summary Judgment**

**1.      PLRA and Plaintiff's Grievances**

At the time of the incidents which give rise to the present action, Plaintiff was incarcerated at the St. Louis Correctional Facility ("SLF"), part of the Michigan Department of Corrections ("MDOC"). Prisoners at MDOC facilities are given the right to "[seek] redress for alleged violations of policy and procedure or unsatisfactory conditions," but prisoners making grievances must follow certain rules and deadlines. Policy Directive ("PD") 03.02.130 Preamble. These requirements are laid out in MDOC Policy Directive, PD 03.02.130 (effective 12/19/03), Prisoner/Parolee Grievances (the "Policy Directive" or "PD").

The Policy Directive first requires that, within two business days of becoming aware of a grievable issue, a prisoner must first make an informal attempt to resolve it, unless he is prevented from doing so by circumstances outside of his control. PD 03.02.130(R). If he is dissatisfied with the result of this attempt, he may proceed to Step I of the grievance process. On a form supplied by MDOC, the prisoner must briefly describe the facts of the issue being grieved. PD 03.02.130(T). This form must be filed with a designated Grievance Coordinator

within five business days of the prisoner's informal attempt at resolution. PD 03.02.130(X).

If the prisoner is dissatisfied with the Step I response, he may appeal to Step II by obtaining an appeal form within five business days of the response and submitting the appeal within five business days of obtaining the form. PD 03.02.130(DD). The Step II respondent is designated by the Policy Directive, such as the Parole Board Chairperson for grievances involving the Parole Board. If the prisoner is still dissatisfied after receiving the Step II response, he may appeal to Step III using the same appeal form. The Prisoner Affairs Section, on behalf of the MDOC Director, is the respondent for Step III appeals.

A.     _Defendants Lafler, Nash and Slavin_:

While Plaintiff timely filed and exhausted both his grievances, these grievances do not make charges against every Defendant named in Plaintiff's complaint. In *Jones v. Bock*, 127 S. Ct. 910 (2007), the Supreme Court held that exhaustion is an affirmative defense that can be raised by Defendants. Defendants Lafler, Nash and Slavin have raised this defense. Plaintiff did not name Defendant Lafler in either of his grievances. Defendants Nash and Slavin, while named, are not the focus of either grievance but are named solely in an incidental manner.

In *Jones*, the Supreme Court held that the PLRA does not require that a prisoner name all of the defendants in his grievances. *Jones*, 127 S Ct at 922. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 923. *Jones*, however, was based on a previous version of MDOC Policy Directive 03.02.130 that did not require that prisoners list names of potential defendants in their grievances. *Id.* at 916 (discussing policy effective November 1, 2000). Yet, that 2000 policy directive was changed in 2003 prior to Plaintiff filing his Complaint or his 2006 grievances. Section T of P.D. 03.02.130 (Effective

December 19, 2003) requires prisoners to include names of potential defendants in their grievances.

(1.) <u>Warden Lafler</u>: Reading both grievances, it is unclear what role Warden Lafler had in either incident.[2]  Because Plaintiff has not named Defendant Lafler in any grievance and has failed to exhaust the grievance process with regard to Defendant Lafler.

(2.) <u>RUO Nash</u>:  Plaintiff names Defendant Nash in both grievances.  Each grievance treats Defendant Nash as incidental player in Plaintiff's narrative; they do not accuse Defendant Nash of any specific misdeeds.   Grievance SLF-06-07-1280-19d dealt with the loss of Plaintiff's personal property, and was decided in his favor (Dkt. # 14, Ex. A).  In this grievance, Plaintiff stated that he spoke to "Nash and enquired as to the whereabouts of [his] property" (Dkt. # 14, Ex. A).  In response, Nash stated that "Plaintiff's property was placed in a plastic bag and sent to the property room." *Id.*  Plaintiff may believe that Defendant Nash stole his property, but he fails to raise that allegation in his grievance.

In grievance SLF-06-07-1281-03b, Plaintiff stated that he approached Defendant Nash about Defendant Lindsey's threats and that Defendant Nash "sent [him] to ARUS Adams' office to speak to her about" Defendant Lindsey (Dkt. # 14, Ex. B).  This grievance is clearly targets ARUS Adams and ARUS Fields whom he accuses of deliberate indifference (Dkt. 14, Exhibit B, p. 3).

MDOC policy requires that inmates try to resolve "the issue with the staff member

---

[2] Plaintiff, in his response to Defendants' motion to dismiss/for summary judgment, asserts that "Defendants Lafler and Slavin violated Plaintiff's rights to Due Process and Access to the Courts when they conspired to make a false misconduct report" (DKt. # 20, p. 2). Regardless of this claim's merits it has not been raised in any grievance and thus was not exhausted.

involved prior to filing the grievance unless prevented by circumstances beyond his/her control." PD 03.02.1320(G)(2). Consistent with this directive, Plaintiff stated in his grievance that he "attempted to resolve this matter with ARUS Adams and ARUS Fields on 3 separate occasions" (Dkt. # 14, Ex. B). Plaintiff makes no indication that he attempted to resolve any disagreement with Defendant Nash supporting the conclusion that Defendant Nash is not a target in this grievance. Thus, Grievance SLF-06-07-1281-03b is a grievance solely against ARUS Adams and ARUS Fields and not RUO Nash. Accordingly, Plaintiff has failed to exhaust his grievances against Defendant Nash.[3]

(3.) <u>RUO Slavin</u>: Plaintiff did not exhaust any grievances with regard to Defendant Slavin. In grievance SLF-06-07-1281-03b, Plaintiff mentions Defendant Slavin once stating: "in an attempt to make it appear that I had some wrongdoing in this attack by Lindsey, I was issued a major misconduct for fighting by C/O Slavin and placed in segregation" (Dkt. # 14, Ex. B). The analysis of Defendant Slavin parallels that of Defendant Nash. Defendant Slavin, while mentioned, is not the focus of the grievance. Under MDOC directives, Plaintiff never discussed his concerns with Defendant Slavin,[4] and the grievance, which mentions Defendant Slavin, is clearly focused on ARUS Adams and ARUS Fields as the alleged wrongdoers. Accordingly,

---

[3] Assuming *arguendo*, that Plaintiff properly exhausted his claims against Defendants Nash his claims should be dismissed on alternate grounds of not demonstrating any constitutional violation under 42 U.S.C. § 1983. Even if Defendant Nash was found to be responsible for the loss of Plaintiff's personal items, Plaintiff has failed to allege an inadequate remedy at law for his lost property as is required by *Parratt v. Taylor*, 451 U.S. 527 (1981). On Plaintiff's Eighth Amendment claim, Defendant Nash's referral of the Plaintiff to ARUS Adams, the appropriate supervisory official on duty at the time, could not be found to be deliberate indifference.

[4] Plaintiff may well have discussed his concerns with Defendants Nash and Slavin, but he did not indicate having done so in a manner consistent with filing of a grievance.

Plaintiff has failed to exhaust his grievances against Defendant Slavin.[5]

For the reasons discussed above, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment against Defendant Nash be **DENIED**, and Defendants Lafler, Nash and Slavin motion to dismiss be **GRANTED** because of Plaintiff's failure to exhaust his grievances against them. **IT IS ALSO RECOMMENDED** that Plaintiff's state law claim alleging conspiracy in the issuance of a major misconduct ticket be **DISMISSED** without prejudice under 28 U.S.C. §1367(c)(3) because of the recommendation that the related underlying federal claim be dismissed.

**B.** **Deliberate Indifference Claims Against ARUS Adams and Fields:**

Plaintiff fully exhausted grievance SLF-06-07-1281-03b against ARUS Adams and Fields, the question is whether Plaintiff asserts sufficient facts to uphold a claim of deliberate indifference under the Eighth Amendment. Plaintiff has filed a motion for summary judgment against Defendants Adams and Fields on these claims.

1. <u>ARUS Adams:</u> Defendants' motion to dismiss states that ARUS Adams' failure to respond on June 22, 2006, while ARUS Fields was on vacation, was not deliberate indifference by Adams because Plaintiff was under the control of a different ARUS. This is not the case if Adams on that day was the ARUS in charge. Yet, Adams' failure to act did not result in

---

[5] With regard to Defendant Slavin, Defendants in their motion to dismiss suggest that Plaintiff has named Defendant Slavin because she ran from the fight between Plaintiff and Defendant Lindsey (Dkt. # 14, p. 12). Plaintiff in his response is clear that he has named Defendant Slavin because she "conspired to issue Plaintiff a false misconduct report" (Dkt. # 20, p. 2). Plaintiff has provided no facts supporting any conspiracy. Plaintiff was involved in an altercation with inmate Lindsey and apparently both were charged with a misconduct ticket for fighting. Apparently the hearing office found that Plaintiff was a victim, not an instigator and Plaintiff was found not guilty on his misconduct ticket.

Plaintiff suffering any physical harm because the attack was on June 27 after ARUS Fields had returned and resumed responsibility for Plaintiff. Therefore Plaintiff's only claim against ARUS Adams would be for the anxiety and mental suffering he experienced from June 22-26 until ARUS Fields returned. While Lindsey again threatened Plaintiff on June 24 and attempted to pull him off his top bunk, no actual injury has been alleged from that incident. The Prison Litigation Reform Act bars recovery of damages for anxiety absent actual physical injury. Specifically, the Act provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). This bar applies to statutory as well as constitutional claims. *See Robinson v. Corrections Corp. of America*, 14 Fed.Appx. 382, 383 (6th Cir. 2001); *Cassidy v. Indiana Dep't of Corr.*, 199 F.3d 374, 376-77 (7th Cir. 2000). Further, a physical injury must be more than *de minimis* to support a claim for mental or emotional suffering under the Eighth Amendment and § 1997e(e). *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), modified by, 216 F.3d 970 (11th Cir. 2000), *cert.* denied, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001) (No. 00-484). Defendant Adams was not responsible for Plaintiff at the time he was attacked by Defendant Lindsey on June 27 and any harm Plaintiff suffered from June 22-26 is barred by the PLRA.

Thus, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgement against ARUS Adams be **DENIED** and that Defendant Adams' Motion to Dismiss be **GRANTED** and the Eighth Amendment claim against ARUS Adams **BE DISMISSED** with prejudice. **IT IS ALSO RECOMMENDED** that this Court decline to exercise jurisdiction over Plaintiff's state law claims against ARUS Adams under 28 U.S.C. §1367(c)(3).

2. <u>ARUS Fields</u> : Plaintiff on June 27 was seriously assaulted by inmate Lindsey after what he alleges were repeated warnings and requests to ARUS Fields that he be moved. While Defendant Fields disputes many of Plaintiff's asserted facts,[6] the question is whether on the facts alleged a reasonable fact finder could find that ARUS Fields was deliberately indifferent to a serious risk of harm to Plaintiff. "Deliberate indifference" has been variously defined by the federal courts that have considered prisoners' Eighth Amendment claims, but all agree that it is more than mere negligence and less than actual intent. "In the context of prison cases involving assault by other inmates, mere negligence on the part of prison officials is not sufficient to give rise to culpability under the eighth amendment." *Stewart v. Love*, 696 F.2d 43 (6th Cir. 1982) (quoting *United States v. Twomey*, 479 F.2d 701, 721 (7th Cir.1973), *cert.* denied,414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974)). In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court explained the meaning of "deliberate indifference:"

---

[6] In a sworn affidavit, Defendant Fields stated that Plaintiff "did not approach me concerning a cell move or problems with his cell mate on June 21, 2006," and speaking with Plaintiff on June 26, 2006, "he informed me that he was not getting along with his cellmate and that he wanted to move. He did not go into detail about anything that occurred between him and Lindsey. I asked him whether he had been threatened or whether he was in any danger, and he said 'no'" (Dkt. # 32, Ex. A). Defendant Fields further stated that she "did not tell Mills that I was taking June 22 and 23, 2006, off work. I did in fact take those days off, but I do not tell prisoners the days that I take off. He could only have known that I was off those days because I was not in the housing unit." *Id.*

In the Step I response to Plaintiff's grievance SLF-06-07-1281-03b, it was noted that "RUO Nash was interviewed and he states grievant was always complaining about every cell mate he had and that he would refer him the ARUSs each time. RUO Nash states that grievant seemed to have a problem with who ever he roomed with" (Dkt. # 14, Ex. B). If this statement in true, it could suggest that Defendants exercised professional judgment in not immediately responding to Plaintiff's habitual claims of cell mate disagreements.

Yet, Plaintiff counters with his and Gary Vanreyendam's affidavit that since arriving at SLF has had only Mr. Vanreyendam as a cell mate prior to Defendant Lindsey. Both claim that Plaintiff and Mr. Vanreyendam were friends, played chess, shared food and neither asked to be moved.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; *the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference*. . . . Eighth Amendment suits against prison officials must satisfy a "subjective" requirement.

511 U.S. at 836-37 (emphasis supplied). *See also Estelle*, 429 U.S. at 105-06 (stating that a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim under the Eighth Amendment); *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (stating that deliberate indifference is the equivalent of "criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm"); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) ("Obduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference.").

Accordingly, even "gross negligence" by prison officials is insufficient to support a deliberate indifference claim. *Ribble v. Lucky*, 817 F. Supp. 653, 655 (E.D. Mich. 1993). As noted in *Estelle*, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. The Supreme Court held that "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842; *see Price*, 65 F.3d at 347 ("*Farmer* established that a risk of danger particular to the individual was not required....").

The Court noted:

> For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding,

> pervasive, well-documented, or expressly noted by prison officials
> in the past, and the circumstances suggest that the
> defendant-official being sued had been exposed to information
> concerning the risk and thus must have known about it, then such
> evidence could be sufficient to permit a trier of fact to find that the
> defendant-official had actual knowledge of the risk.

*Farmer*, 522 U.S. at 842-43 (internal quotations omitted).

In *Street v. Corrections Corporation of America,* 102 F.3d 810 (6th Cir. 1996)*,*

Corrections Officer Stephen when he came on duty was told that Plaintiff Street and inmate

Harris had "gotten into it" referring to an exchange of threats. Both had been offered and

declined protective custody.

> Stephen stated that after the shift change, Harris asked him either, "What would
> you do if I kicked [Street's] ass?" or "What would you do if I knock [Street] out?"
> Stephen told Harris that if he witnessed such an incident, it would be reported
> and that Harris would be placed in isolation. Stephen admitted that he failed to
> report this discussion with Harris to a senior officer or supervisor.

> Stephen stated that he then simultaneously opened all the doors to the cells in L
> Unit from a control panel. After Stephen opened the doors, Harris attacked Street
> with a sock with at least one metal lock in it.

*Id.* at 812 -813. (footnote omitted.)

The Sixth Circuit reversed a grant of summary judgment to CO Stephen.  It noted that the

risk of serious harm could be proved by "*either* a pervasive risk of harm generally *or* a serious

risk of assault to a member of an identifiable group," *i.e.* by showing a specific risk of harm. *Id.*

at 815.

Quoting *Farmer* on the need for the defendant being aware of facts suggesting a

substantial risk of serious harm and the added need for the defendant to  draw that inference

concerning the risk, the Sixth Circuit noted:

This is a question of fact "and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was [*816] obvious." *Id.* A prison official can be liable if he "disregards that risk by failing to take reasonable measures to abate it." *Id.* at ----, 114 S.Ct. at 1984.

*Id.* at 815-16.

There is an issue of fact as to whether this risk became so "obvious" to be "substantial" after Harris asked the guard on duty (defendant Stephen) either, "What would you do if I kicked [Street's] ass?" or "What would you do if I knock [Street] out?"

The question Harris asked Stephen demonstrates that there are issues of fact as to whether Stephen was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and whether he actually "dr[e]w the inference." Farmer, 511 U.S. at ---- , 114 S.Ct. at 1979. If, as it appears, Stephen was aware of these facts and actually drew such an inference, he would be liable to Street under § 1983. These issues of fact are therefore material.

*Id.* at 815. (footnotes omitted.)

If an inmate demonstrates that a prison official knew of a substantial risk because it obvious" that prison official can be liable if he "disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Plaintiff alleges that by leaving him in his cell with Defendant Lindsey, Defendants Fields violated his Eighth Amendment rights because Fields "knowingly refused to take any action to prevent, and/or, protect, Plaintiff from the serious assault after Defendants knew that there was high probability that Plaintiff would be assaulted by Defendant Lindsey" (Dkt. # 1, p. 14). Plaintiff claims that Defendants ignored his reports of assaults and threats engaging in reckless and deliberate indifference by leaving him in his cell with Defendant Lindsey. *Id.* at 15.

In *Lewis v. McClennan*, it was held that a hypothetical risk of danger is not sufficient risk to sustain a claim of deliberate indifference under the Eighth Amendment. *Lewis v.*

*McClennan*, 7 Fed.Appx. 373 (6th Cir. 2002), *See Faulkner v. Litscher*, 130 Fed. Appx. 812 (7th Cir. 2005) (Employees of private prison did not act with deliberate indifference to state prisoner's safety, in violation of Eighth Amendment, for allegedly failing to protect him from assault by a fellow inmate, even though prisoner alerted employees to threat, where employees was offered opportunity to transfer to segregation, but he declined.).

In *Stewart*, the Sixth Circuit upheld the district court's determination that prison officials did not violate Plaintiff's Eighth Amendment by failing to protecting an inmate from a single, isolated assault after he told prison officials about rumors of an impending assault. *Stewart*, 696 F.2d 43. Prior to his assault, the Plaintiff in *Stewart* provided unsubstantiated information to prison officials that threats were made against him. As a result of this information, Plaintiff was moved from his cell and returned to it six months later. Upon returning to his cell, Plaintiff again heard rumors that he would be attacked, reported these rumors to prison officials, but was not moved. Shortly thereafter he was assaulted. The Sixth Circuit's decision in *Stewart* was a scant page in length, but attached as an appendix to its decision was the district court's judgment. This decision provides greater insight into the particulars of the case noting "that generally an isolated or occasional attack is not sufficient to state a claim. In the present case, the incident of which the plaintiff complains is clearly a single, isolated incident (internal quotations removed)." *Id.* (quoting *Woodhous v. Commonwealth of Virginia*, 487 F.2d 889 (4th Cir.1973)).

Defendant Fields, in his motion to dismiss, cites *Stewart* to support dismissal noting that Plaintiff's allegation involves isolated incidents, and "just as in *Stewart*, even believing Plaintiff's version of the facts, no deliberate indifference is shown and Plaintiff's

failure-to-protect claim must be dismissed" (Dkt. # 14, p. 17).

This argument reads *Stewart* too broadly. While finding no deliberate indifference in the specific case before it where the prison officials had separated *Stewart* from the threatening inmate for a six month period prior to the assault, the Sixth Circuit noted that "had no action whatsoever been taken to protect the plaintiff, the court would be inclined to allow this action to proceed to a full hearing." *Stewart*, 696 F.2d 43. Further, the Court explained that Plaintiff "reported only the most general allegations, that 'someone was going to get hit on the head.' Furthermore, while the plaintiff asserts that letters were circulated threatening to harm or kill him, he has never seen any such letters and is apparently unable to produce them." *Id.* The action taken by a defendant need not be effective in order to establish a defense to a claim of deliberate indifference.[7]

Unlike in *Stewart*, Plaintiff Mills alleges that Defendants Fields took no action even though he was repeatedly made aware of the Defendant Lindsey's threats and assaults.

The court in *Stewart* recognized that prison officials can be absolved of any Eighth Amendment violation when they make a professional judgment based on unsupported general allegations. In the present case, if Plaintiff's allegations are believed, Defendants Fields was not dealing with unsupported general allegations of harm but rather a specific and repeated threat from a specific inmate, Lindsey. Unlike *Stewart*, Defendant Fields was not dealing with unseen

---

[7] In *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006), the Court held that prison officials were not guilty of an Eighth Amendment violation, even though they "had knowledge Plaintiff faced a risk of serious harm" from his mentally ill cell mate. Defendants successfully argued that they acted reasonably by taking Plaintiff's cell mate to see a psychiatrist who examined the cell mate and "determined that he was fit to return to his cell." *Id.*

notes containing undefined threats. While these facts may be disputed, Plaintiff asserts that he spoke with ARUS Fields on June 21, 2006, about his concerns, and was told that he could not be moved because Defendant Fields would be gone for two days on vacation and then it would be the weekend. Such concerns were repeated by Plaintiff on June 22 after being assaulted in his top bunk by Defendant Lindsey which he told to RUO Nash and ARUS Adams. On June 26, 2006, Plaintiff claims that spoke with ARUS Fields twice about Defendant Lindsey's threats, and offered to waive his non-smoking designation so that he could be moved to the smoking wing of the prison.

Assuming Plaintiff's allegations are correct, the information Plaintiff claims to have given to Defendant Fields on June 21 and 26 demonstrate that ARUS Fields was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that he actually "dr[e]w the inference" which could be found to be obvious and did nothing to protect Plaintiff. As in the *Street* case, such a showing would support a finding of deliberate indifference against ARUS Fields.

As noted in footnote 6, there are disputed questions of material fact regarding what Defendant Fields was told and when. These cannot be decided on either party's motion for summary judgment.

Accordingly, **IT IS RECOMMENDED** that both Defendant Field's motion to dismiss or summary judgment and Plaintiff's motion for summary judgment be **DENIED**.

While most of his federal claims should been dismissed, Plaintiff's Eighth Amendment claim against Defendant Fields remains. In the interest of judicial economy, **IT IS RECOMMENDED** that this Court retain supplemental jurisdiction over Plaintiff's remaining state

claims of reckless or deliberate indifference against Defendant Fields and his state assault claim against Defendant Lindsey.

## IV.    Conclusion:

Accordingly, **IT IS RECOMMENDED** that:

(1.) Plaintiff's motion for summary judgment against Defendants Fields, Adams and Nash be **DENIED**;

(2.) Defendants Lafler, Nash, Slavin and Adams motion to dismiss be **GRANTED** with prejudice on his federal claims against them and Plaintiff's state law claims against them be **DISMISSED** without prejudice;

(3.) Defendant Field' motion to dismiss or for summary judgment regarding Plaintiff's Eighth Amendment claims be **DENIED**, and that supplemental jurisdiction be retained of over the state tort claims against Defendant Fields and Defendant Lindsey.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof, as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir.

1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.  If the Court determines any objections are without merit, it may rule without awaiting the response to the objections.

Date: July 31, 2008.                                   s/Steven D. Pepe_____
Ann Arbor, Michigan                              United States Magistrate Judge


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing ***Report and Recommendation***  was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 31, 2008.


                                                      s/ Alissa Greer_____
                                                      Case Manager to Magistrate
                                                      Judge Steven D. Pepe
                                                      (734) 741-2298